Charles A. Davis

515 Saint Lawrence Avenue

Janesville, Wisconsin 53545

630-319-6688

charliedee787@gmail.com

Date: 30th March 2026-7021 2720 0003 3028 8621


Clerk of Court, a Certified mail:

7021 2720 0003 3028 8638

United States District Court

Western District of North Carolina

Statesville Division

200 West Broad Street, Room 202

Statesville, NC 28677


Re: United States v. Charles A. Davis

Case No. 5:11-cr-32

Petition for Writ of Error Coram Nobis

United States District Court

Western District of North Carolina

Statesville Division

200 West Broad Street, Room 202

Statesville, NC 28677

Re: United States v. Charles A. Davis

Case No. 5:11-cr-32

Petition for Writ of Error Coram Nobis

FILED
Statesville, NC

APR - 6 2026

Clerk, US District Court
Western District of NC

TABLE OF CONTENTS

JUDGE SUMMARY ............................................................ [3]

I. Introduction ............................................................ [4]

II. Jurisdiction and Availability of Coram Nobis Relief ............ [5]

III. BACKGROUND ... [5]

IV. THE §7212(a) CONVICTION CANNOT STAND.... [6]

V. VALID REASONS FOR DELAY.............. [6]

VI. FUNDAMENTAL ERROR — § 7206(1)......... [6]

VII. The §7206(1) Conviction Cannot Stand.......................... [7]

    A. The Indictment and Record Fail to Establish the Legal Source

      of the Alleged Duty ................................................ [6]

    B. Section 6065 Does Not Establish a Self-Executing Duty .... [6]

    C. The Record Does Not Demonstrate a Lawfully Imposed Duty ... [6]

    D. The Court Need Not Resolve Broader Administrative Questions ... [7]

    E. Structural Concerns Further Underscore the Defect .......... [7]

    F. Relief Is Required ................................................ [7]


VIII. Resulting Defect......................... [8]


IX. Relief Requested .................................................. [8]

Exhibits

Exhibit A – Table of Authorities .......................................... [11]

Exhibit B – Procedural Timeline .......................................... [11]

Exhibit D – Certificate of Service ....................................... [12]

Exhibit E – Clerk Filing Letter .......................................... [13]

Exhibit F – Motion to Accept Filing Out of Time (if included) ..... [14]

JUDGE SUMMARY

This petition presents a narrow and straightforward question:

Whether Petitioner's convictions under 26 U.S.C. §§7206(1) and 7212(a) can stand where the government failed to establish the essential legal predicates required for those offenses.

They cannot.

1. The §7212(a) Conviction Cannot Stand Under Controlling Law

Under Marinello v. United States, a conviction under §7212(a) requires a nexus between the defendant's conduct and a known, pending IRS proceeding.

The record reflects no such proceeding.

Accordingly, the §7212(a) conviction cannot stand.

2. The §7206(1) Conviction Lacks an Essential Legal Predicate

A conviction under §7206(1) requires proof that the defendant made a false statement under penalties of perjury pursuant to a lawfully imposed duty.

However, the indictment and record fail to identify or establish:

The legal source of the duty requiring the declaration

Any implementing regulation or framework giving operative effect to that duty

Any properly established basis sufficient to support felony liability

Absent proof of that predicate, the offense is not established.

3. The Court Need Not Reach Broader Questions

This Court need not resolve broader administrative or statutory questions to grant relief.

The convictions may be vacated on narrow grounds:

Failure to satisfy the nexus requirement under §7212(a)

Failure to establish the legal predicate required under §7206(1)

4. Structural Concerns Reinforce the Result

Even if the Court were to look beyond these narrow grounds, the absence of a clearly articulated and lawfully established duty raises serious concerns under principles recognized in:

United States ex rel. Accardi v. Shaughnessy

Vitarelli v. Seaton

Those principles require that agencies adhere to their own governing rules when exercising authority.

These concerns reinforce, but are not necessary to, the Court's decision.

5. Relief Is Straightforward

Because the government failed to establish the required legal predicates, the appropriate relief is:

Vacatur of the convictions

Dismissal of the indictment

No broader ruling is required.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA

STATESVILLE DIVISION


UNITED STATES OF AMERICA,   )

                )

   Respondent,     )

                )

v.          )   Case No. 5:11-cr-32

                )

CHARLES A. DAVIS,    )

                )

   Petitioner.     )


PETITION FOR WRIT OF ERROR CORAM NOBIS

(28 U.S.C. § 1651(a))


I. INTRODUCTION

Petitioner seeks coram nobis relief from convictions that cannot stand as a matter of law due to the absence of essential legal predicates required to sustain the charged offenses.

## II. JURISDICTION AND STANDARD

This Court has jurisdiction under 28 U.S.C. § 1651(a). A writ of error coram nobis is appropriate where the petitioner is no longer in custody, continues to suffer collateral consequences, and demonstrates a fundamental error rendering the conviction invalid.

## III. BACKGROUND

Petitioner was convicted in 2013 of ten counts under 26 U.S.C. § 7206(1) and one count under 26 U.S.C. § 7212(a). He has completed his sentence and now seeks relief from fundamental defects in the prosecution.

## IV. THE §7212(a) CONVICTION CANNOT STAND

The conviction under 26 U.S.C. §7212(a) cannot be sustained under controlling law.

In Marinello v. United States, the Supreme Court held that §7212(a) requires a nexus between the defendant's conduct and a known, pending IRS proceeding.

The record reflects no such proceeding.

Petitioner continues to suffer substantial consequences including reputational harm, loss of employment-related benefits, and legal disabilities.

This defect independently warrants vacatur and reinforces the need for relief on the remaining counts.

Accordingly, the §7212(a) conviction cannot stand.

## V. VALID REASONS FOR DELAY

The errors asserted involve structural statutory defects not previously raised and not apparent at trial.

## VI. FUNDAMENTAL ERROR — § 7206(1)

Section 7206(1) criminalizes false statements only where a document is legally required to be made under penalty of perjury.

The indictment failed to plead the statutory or regulatory source of that duty. It did not cite 26 U.S.C. § 6065, any implementing regulation, or any authority rendering the Form 1040 declaration legally operative.

Accordingly, an essential element of the offense was never established.

## VII. The §7206(1) Conviction Cannot Stand

The conviction under 26 U.S.C. §7206(1) cannot be sustained because the record fails to establish the essential legal predicate required for that offense, including the absence of a clearly articulated and publicly established duty as contemplated by 26 C.F.R. §601.702.

To obtain a conviction under §7206(1), the government must prove that the defendant willfully made and subscribed a return containing a written declaration that it was made under penalties of perjury, and that the declaration was false as to a material matter.

That showing necessarily presupposes the existence of a lawfully imposed duty requiring such a declaration.

   A.  The Indictment and Record Fail to Establish the Legal Source of the Alleged Duty
   B.  The indictment charges a violation of §7206(1), but does not identify:

The statutory provision imposing a duty to make a declaration under penalties of perjury

Any implementing regulation giving operative effect to that requirement

Any prescribed form or instruction that lawfully establishes such a duty

The omission is not merely technical.

Where a criminal statute depends upon an underlying legal duty, the government must establish the source and lawful existence of that duty as part of its case.

Absent identification of that predicate, the indictment fails to fully charge an offense.

C.  Section 6065 Does Not, Standing Alone, Establish a Self-Executing Criminal Duty

The government's theory necessarily relies on 26 U.S.C. §6065. However:

Section 6065 is not self-executing

It contemplates implementation through regulations, as well as prescribed forms and accompanying instructions.

It does not, by itself, define the specific acts that give rise to criminal liability under §7206(1)

Accordingly, the existence of a valid §7206(1) offense depends upon the proper establishment of the underlying verification requirement.

D.  The Record Does Not Demonstrate a Clearly Established and Lawfully Imposed Verification Requirement

The record does not identify a properly articulated and publicly established regulatory framework governing the duty relied upon for conviction.

At minimum, this raises substantial doubt as to whether:

The alleged duty was clearly defined

The duty was properly promulgated

The duty was sufficiently established to support felony liability

In a criminal prosecution, such uncertainty cannot sustain a conviction.

E.  The Court Need Not Resolve Broader Administrative Questions

The Court need not determine the full scope of the administrative law issues implicated here.

Relief is warranted because the government failed to establish the existence of the legal predicate necessary to support criminal liability under §7206(1).

F.  Structural Concerns Further Underscore the Defect

Even if the Court were to consider the broader framework, the absence of a clearly articulated and properly established duty raises serious concerns under principles recognized in:

United States ex rel. Accardi v. Shaughnessy

Vitarelli v. Seaton

Those cases recognize that agencies must adhere to their own governing rules when exercising authority, including the obligation to properly articulate and make known the duties they seek to enforce.

See 26 C.F.R. §601.702.

The lack of a clearly established duty, as reflected in the record, reinforces the conclusion that the conviction cannot stand.

### G. Relief Is Required

Because the government failed to establish the essential legal predicate for a §7206(1) offense, the conviction must be vacated.

## VIII. Resulting Defect

The failure to plead and establish the essential legal predicate deprived Petitioner of constitutionally adequate notice of the charge and deprived the Court of lawful authority to impose criminal liability under the charged statute.

## IX. Relief Requested

For the reasons set forth above, Petitioner respectfully requests that this Court grant the writ of error coram nobis and provide the following relief:

### A. Vacatur of Convictions

An order vacating Petitioner's convictions under:

26 U.S.C. §7206(1)

26 U.S.C. §7212(a)

On the grounds that the convictions cannot stand as a matter of law.

### B. Dismissal of the Indictment

An order dismissing the indictment with prejudice, as the government failed to plead and establish the essential legal predicates necessary to charge and sustain the offenses.

    C.  Recognition of Fundamental Defect

A determination that the errors identified herein constitute fundamental defects resulting in a complete miscarriage of justice and rendering the proceedings irregular and invalid.

    D.  Additional Relief as the Court Deems Just and Proper

Such other and further relief as this Court deems just and proper under the circumstances. This includes, to the extent appropriate, relief necessary to restore Petitioner to the position he occupied prior to conviction, consistent with the Court's authority and applicable law.

Respectfully submitted,

*Charles A. Davis*    30 march 2026

Charles A. Davis

Petitioner Pro Se

EXHIBIT A

Indictment Excerpt – § 7206(1)

Purpose:

Demonstrates absence of statutory or regulatory predicate.

See Exhibit C (Indictment)


EXHIBIT B

Indictment Excerpt – § 7212(a)

Purpose:

Demonstrates failure to plead nexus required under Marinello v. United States

See Exhibit C (Indictment)


EXHIBIT C

Attached: True and correct copy of the Indictment filed in Case No. 5:11-cr-32.

Exhibit D – Certificate of Service

CERTIFICATE OF SERVICE

I certify that on this 30th day of March, 2026, I served a true and correct copy of the Petition for Writ of Error Coram Nobis, together with Exhibits A through E, by U.S. Mail upon: certified mail no.

7021 2720 0003 8652

Office of the United States Attorney

Western District of North Carolina

227 West Trade Street, Suite 1650

Charlotte, NC 28202

_Charles Davis_ 30 march 2026

Charles A. Davis

Petitioner, Pro Se

Case 5:26-cv-00081-SCR    Document 1    Filed 04/06/26    Page 12 of 27

Exhibit E – Clerk Filing Letter

Dear Clerk:

Enclosed for filing please find Petitioner's Petition for Writ of Error Coram Nobis, together with supporting materials and exhibits, in the above-referenced matter.

Petitioner respectfully requests that the enclosed documents be filed in the record of this case and submitted to the Court for consideration.

A Certificate of Service is included, reflecting service upon the appropriate office of the United States Attorney.

Please file the enclosed documents and return a file-stamped copy to Petitioner at the address listed above.

Thank you for your assistance.

Respectfully submitted,

*Charles Davis* - 30 march 2026

Charles A. Davis

Petitioner, Pro Se

EXHIBIT F

MOTION TO ACCEPT FILING OUT OF TIME

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

STATESVILLE DIVISION

UNITED STATES OF AMERICA

v.

CHARLES A. DAVIS,

Petitioner

Case No. 5:11-cr-32

MOTION TO ACCEPT PETITION FOR WRIT OF ERROR CORAM NOBIS

Petitioner, Charles A. Davis, proceeding pro se, respectfully moves this Court to accept for filing his Petition for Writ of Error Coram Nobis notwithstanding the passage of time since entry of judgment.

In support of this motion, Petitioner states as follows:

The present petition raises legal issues concerning the validity of the convictions entered in this case, including the absence of essential legal predicates required to sustain the offenses charged.

These issues involve structural and legal defects that were not previously raised and could not reasonably have been fully developed at the time of trial, direct appeal, or prior proceedings.

The grounds presented herein have become apparent through subsequent analysis, study, and the development and application of controlling legal principles.

Petitioner has acted diligently in bringing this petition upon recognizing the legal significance of these issues.

Consideration of the petition is necessary to prevent a fundamental miscarriage of justice.

WHEREFORE, Petitioner respectfully requests that this Court accept and consider the accompanying Petition for Writ of Error Coram Nobis.

Respectfully submitted,

*Charles Davis*

Charles A. Davis

Petitioner, Pro Se

Date: *30 March 2026*

Case 5:26-cv-00081-SCR     Document 1     Filed 04/06/26     Page 15 of 27



EXHIBIT C

"UNDER SEAL"

FILED
CHARLOTTE, NC

MAY 19 2011

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 5:11 cr 32 |
| ) | |
| ) | **BILL OF INDICTMENT** |
| v. ) | |
| ) | Violations: |
| ) | 26 U.S.C. § 7206(1) (ten counts) |
| CHARLES A. DAVIS ) | 26 U.S.C. § 7212(a) (one count) |
| ) | |

THE GRAND JURY CHARGES:

INTRODUCTION

At the specified times and at all relevant times:

Tax Fraud Scheme

1. From in or about June 1983 through the present, Defendant CHARLES A. DAVIS (Davis) has been employed as a pilot by an international airline carrier headquartered within the United States.

2. For each of the years 1996 through 2008, Davis's employer paid wages to Davis and reported those wages to the Internal Revenue Service (IRS) on IRS Form W-2, Wage and Tax Statement.

3. On or about January 1, 1997, Davis submitted to his employer a Form W-4, Employee's Withholding Allowance Certificate, that falsely claimed that Davis was exempt from the withholding of federal income tax from his wages. Davis attached to this fraudulent Form W-4 a two-page letter dated November 29, 1996, which falsely claimed that Davis was not an "employee" under the internal revenue laws and that he was not liable for federal income tax during the previous year, nor did he expect to be liable in the current or future years.

4. Based on the fraudulent Form W-4, Davis's employer withheld little or no federal income tax from Davis's wages for each of the years 1997 through 2005. During these years, Davis's employer paid him approximately the following amounts of wages and withheld approximately the following amounts of federal income tax:

Case 5:26-cv-00081-SCR     Document 1     Filed 04/06/26     Page 16 of 27

| Year | Wages | Federal Income Tax Withheld |
|------|-------|-----------------------------|
| 1997 | $189,292 | $4,222 |
| 1998 | $162,601 | $0 |
| 1999 | $176,181 | $0 |
| 2000 | $172,843 | $0 |
| 2001 | $185,410 | $0 |
| 2002 | $190,510 | $0 |
| 2003 | $161,895 | $1 |
| 2004 | $146,579 | $0 |
| 2005 | $129,950 | $34 |

5. During years 1997 through at least 2010, Davis sent numerous communications to the IRS falsely denying that he was subject to the internal revenue laws and required to file federal income tax returns and to pay income tax. During this time period, Davis also made numerous filings in Superior Court in Iredell County, North Carolina, in which he made similar claims. On March 31, 1997 and subsequent dates, the IRS sent Davis numerous letters informing him of the frivolous nature of his arguments and requesting that he comply with his tax reporting and payment obligations.

6. In or about calendar year 1999, the IRS initiated examinations of Davis's income tax liabilities for years 1996 and 1997. Subsequently, the IRS examined Davis's tax liabilities for years 1998 through 2000. As a result of the examinations, the IRS sent Davis notices of deficiency or balance due for each of the years 1996 through 2000.

7. Davis never properly responded to the above notices or subsequent notices, but instead sent false documents to the IRS. For example, on or about April 10, 2001, Davis filed an IRS Form 1040A for the year 2000 reporting zero wages for the year.

8. On or about December 14, 2004, after assessing tax liabilities against Davis for years 1996 through 2000, the IRS filed a Notice of Federal Tax Lien in Superior Court in Iredell County, North Carolina. Including interest and penalties, the federal tax lien totaled approximately $334,830. On December 21, 2004, the IRS sent Davis a letter notifying him of the lien.

9. On or about January 4, 2005, the IRS sent Davis a Final Notice of Intent to Levy for years 1996 through 2000. Including interest and penalties, the notice of levy totaled approximately $436,051.

2

10. To attempt to prevent the IRS levy, in March 2005, Davis filed documents with the Iredell County Register of Deeds purporting to transfer title of his personal residence, located in Mooresville, North Carolina, to Cadco Investments, Inc.

11. In or about December 2005, the IRS directed Davis's employer to begin withholding federal income tax from Davis's wages. The IRS notified Davis of this direction by letter sent on or about December 22, 2005.

12. On or about March 13, 2006 and subsequent dates, to collect Davis's unpaid tax liabilities for years 1996 through 2000, the IRS issued notices of levy to Davis's employer and to financial institutions used by Davis.

13. On or about March 27, 2006, Davis filed for bankruptcy to attempt to defeat the IRS levies. On April 10, 2006, Davis filed a voluntary dismissal of the bankruptcy.

14. In or about April 2006, Davis filed five fraudulent Forms 1040X, Amended U.S. Individual Income Tax Returns, for years 1996 through 2000, respectively. The five Forms 1040X fraudulently purported to reduce Davis's adjusted gross income to amounts of less than $60 and made fraudulent refund claims upon the IRS in amounts ranging from $6,751 (1998) to $55,380 (1996).

15. On or about October 2, 2006, the IRS sent Davis a letter informing him that his 2000 Form 1040X was a frivolous return. The IRS offered Davis the opportunity to correct his position and once again informed Davis of the frivolous nature of the argument that there was no legal requirement to file income tax returns or to pay income taxes.

16. From April 2008 to August 2009, Davis filed with the IRS ten fraudulent IRS Forms 1040, U.S. Individual Income Tax Returns, for years 2001 through 2008, including two forms for each of the years 2004 and 2005. The ten Forms 1040 reported fictitious amounts of interest or other income in amounts ranging from $147,166 (2003) to $2,337,829 (2007) and fictitious amounts of federal income tax withheld in amounts ranging from $147,147 (2003) to $2,371,051 (2007). As a result of the fictitious amounts reported for federal income tax withheld, Davis's ten Forms 1040 made fraudulent refund claims upon the IRS in amounts ranging from $68,587 (2003) to $1,526,285 (2007).

17. On or about April 23, 2008, Davis sent or caused to be a sent a fictitious "Bonded Promissory Note" in the amount of $10,000,000, as well as other fraudulent documents, to the Department of Treasury and to the IRS in an attempt to pay his mortgage.

18. On or about June 26, 2008, after the Superior Court for Iredell County issued an order authorizing the foreclosure of Davis's personal residence, Davis sent or caused to be sent a fictitious "Bonded Promissory Note" in the amount of $5,000,000, as well as other fraudulent documents, to the United States Department of Treasury and other parties. Davis filed for bankruptcy in October 2008 to attempt to prevent eviction. In January 2009, the federal bankruptcy court dismissed Davis's bankruptcy filing.

3

Case 5:26-cv-00081-SCR    Document 1    Filed 04/06/26    Page 18 of 27

19. On or about January 8, 2009, Davis submitted fraudulent correspondence to the IRS, including an IRS Form 1040-V, Payment Voucher, and three documents styled "Allonge." The documents purported to make payments to the United States Treasury totaling approximately $2,259,075, including amounts relating to Davis's outstanding IRS liabilities and an amount of $147,219 relating to Davis's outstanding tax liability to the State of North Carolina for years 1999 through 2003.

20. On or about February 7, 2009, Davis submitted a fraudulent voucher to the IRS purporting to pay approximately $1,109,811 to the United States Treasury.

21. On or about February 20, 2009, the IRS informed Davis's employer to resume the levy upon Davis's wages, which had been temporarily suspended during his bankruptcy proceeding in late 2008 and early 2009. To attempt to avoid the levy, Davis, during year 2009 and other years, directed additional contributions to his 401(k) retirement plan to reduce or eliminate his net pay.

22. On or about April 3, 2009, Davis sent fraudulent documents to the IRS, including a fictitious money order for approximately $1,600,000, which purported to make payment upon Davis's tax liabilities.

23. In October 2009, Davis opened a bank account in the name of "Unlisted-Trust." Davis represented that the bank account was for a corporation and fraudulently supplied a tax identification number that had not been issued by the IRS.

24. From October 2009 to January 2010, to conceal his income and assets from the IRS, Davis deposited the proceeds of numerous paychecks into the Unlisted-Trust account, upon which paychecks his employer had failed to make wage levies.

25. On or about July 16, 2010, Davis sent the IRS fraudulent documents, including fraudulent IRS Forms 1096 and Form 1099-A, that purported to pay the IRS approximately $181,053, the amount of Davis's outstanding tax liability to the State of North Carolina for years 1999 through 2003.

<u>COUNTS ONE THROUGH FIVE</u>
<u>26 U.S.C. Section 7206(1)</u>
<u>Willfully Filing Materially False Amended Tax Returns</u>

26. Paragraphs 1 through 25 of the Introduction are re-alleged and incorporated herein.

27. That on or about the dates listed in the table below, the defendant, CHARLES A. DAVIS, a resident of Mooresville, North Carolina, did willfully make and subscribe IRS Forms 1040X, Amended U.S. Individual Income Tax Returns, for the years listed below, each of which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. The IRS Forms 1040X, each of which was prepared and signed in the Western District of North Carolina and which was filed with the IRS, reported a "Correct Amount" of adjusted gross income in the amounts listed below, whereas, as the defendant

4

Case 5:26-cv-00081-SCR   Document 1   Filed 04/06/26   Page 19 of 27

then and there knew and believed, his true and correct adjusted gross income was substantially greater than the amount reported as the "Correct Amount."

| Count | Year | Date | Line | "Correct Amount" of Adjusted Gross Income |
|---|---|---|---|---|
| 1 | 1996 | April 28, 2006 | 1 | $52 |
| 2 | 1997 | April 28, 2006 | 1 | $0 |
| 3 | 1998 | April 28, 2006 | 1 | $17 |
| 4 | 1999 | April 28, 2006 | 1 | $0 |
| 5 | 2000 | April 28, 2006 | 1 | $0 |

All in violation of Title 26, United States Code, Section 7206(1).

## COUNTS SIX THROUGH TEN
### 26 U.S.C. Section 7206(1)
### Willfully Filing Materially False Amended Tax Returns

28. Paragraphs 1 through 25 of the Introduction are re-alleged and incorporated herein.

29. That on or about the dates listed in the table below, in the Western District of North Carolina, the defendant, CHARLES A. DAVIS, a resident of Mooresville or Charlotte, North Carolina, did willfully make and subscribe IRS Forms 1040, U.S. Individual Income Tax Returns, for the years listed below, each of which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. The IRS Forms 1040, each of which was prepared and signed in the Western District of North Carolina and which was filed with the IRS, reported federal income tax withheld in the amounts listed below, whereas, as the defendant then and there knew and believed, the true amount of federal income tax withheld was substantially less than the amount reported.

| Count | Year | Date | Line | Federal Income Tax Withheld |
|---|---|---|---|---|
| 6 | 2004 | April 15, 2008 | 63 | $269,808 |
| 7 | 2005 | October 1, 2008 | 64 | $644,421 |
| 8 | 2006 | October 27, 2008 | 64 | $388,798 |
| 9 | 2007 | October 27, 2008 | 64 | $2,371,051 |
| 10 | 2008 | February 20, 2009 | 62 | $2,326,940 |

All in violation of Title 26, United States Code, Section 7206(1).

5

## COUNT ELEVEN
## 26 U.S.C. Section 7212(a)
## Corruptly Obstructing and Impeding the IRS

30.    Paragraphs 1 through 25 of the Introduction are re-alleged and incorporated herein.

31.    From in or about March 2006 through the present, the defendant, CHARLES A. DAVIS, in the Western District of North Carolina and elsewhere, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by the following means, among others:

   a.    Filing or causing to be filed fraudulent IRS forms, including Forms 1040 and 1040X for years 1996 through 2008;

   b.    Filing for bankruptcy to attempt to defeat IRS levies;

   c.    Sending fictitious documents to the Department of Treasury and the IRS, which purported to discharge his debts to the United States Treasury and other parties;

   d.    Providing false information in connection with the opening of a bank account, including a taxpayer identification number that had not been issued by the IRS; and

   e.    Concealing his assets and income in a nominee bank account.

   All in violation of Title 26, United States Code, Section 7212(a).

ANNE TOMPKINS
UNITED STATES ATTORNEY

JENNY GRUS SUGAR
ASSISTANT UNITED STATES ATTORNEY

KEVIN C. LOMBARDI
TRIAL ATTORNEY, TAX DIVISION
U.S. DEPARTMENT OF JUSTICE

6

EXhIBIT C

"UNDER SEAL"

FILED
CHARLOTTE, NC

MAY 19 2011

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 5:11 cr 32 |
| | ) | |
| | ) | |
| | ) | **BILL OF INDICTMENT** |
| v. | ) | |
| | ) | Violations: |
| | ) | 26 U.S.C. § 7206(1) (ten counts) |
| CHARLES A. DAVIS | ) | 26 U.S.C. § 7212(a) (one count) |
| | ) | |

THE GRAND JURY CHARGES:

### INTRODUCTION

At the specified times and at all relevant times:

### Tax Fraud Scheme

1. From in or about June 1983 through the present, Defendant CHARLES A. DAVIS (Davis) has been employed as a pilot by an international airline carrier headquartered within the United States.

2. For each of the years 1996 through 2008, Davis's employer paid wages to Davis and reported those wages to the Internal Revenue Service (IRS) on IRS Form W-2, Wage and Tax Statement.

3. On or about January 1, 1997, Davis submitted to his employer a Form W-4, Employee's Withholding Allowance Certificate, that falsely claimed that Davis was exempt from the withholding of federal income tax from his wages. Davis attached to this fraudulent Form W-4 a two-page letter dated November 29, 1996, which falsely claimed that Davis was not an "employee" under the internal revenue laws and that he was not liable for federal income tax during the previous year, nor did he expect to be liable in the current or future years.

4. Based on the fraudulent Form W-4, Davis's employer withheld little or no federal income tax from Davis's wages for each of the years 1997 through 2005. During these years, Davis's employer paid him approximately the following amounts of wages and withheld approximately the following amounts of federal income tax:

| Year | Wages | Federal Income Tax Withheld |
|---|---|---|
| 1997 | $189,292 | $4,222 |
| 1998 | $162,601 | $0 |
| 1999 | $176,181 | $0 |
| 2000 | $172,843 | $0 |
| 2001 | $185,410 | $0 |
| 2002 | $190,510 | $0 |
| 2003 | $161,895 | $1 |
| 2004 | $146,579 | $0 |
| 2005 | $129,950 | $34 |

5. During years 1997 through at least 2010, Davis sent numerous communications to the IRS falsely denying that he was subject to the internal revenue laws and required to file federal income tax returns and to pay income tax. During this time period, Davis also made numerous filings in Superior Court in Iredell County, North Carolina, in which he made similar claims. On March 31, 1997 and subsequent dates, the IRS sent Davis numerous letters informing him of the frivolous nature of his arguments and requesting that he comply with his tax reporting and payment obligations.

6. In or about calendar year 1999, the IRS initiated examinations of Davis's income tax liabilities for years 1996 and 1997. Subsequently, the IRS examined Davis's tax liabilities for years 1998 through 2000. As a result of the examinations, the IRS sent Davis notices of deficiency or balance due for each of the years 1996 through 2000.

7. Davis never properly responded to the above notices or subsequent notices, but instead sent false documents to the IRS. For example, on or about April 10, 2001, Davis filed an IRS Form 1040A for the year 2000 reporting zero wages for the year.

8. On or about December 14, 2004, after assessing tax liabilities against Davis for years 1996 through 2000, the IRS filed a Notice of Federal Tax Lien in Superior Court in Iredell County, North Carolina. Including interest and penalties, the federal tax lien totaled approximately $334,830. On December 21, 2004, the IRS sent Davis a letter notifying him of the lien.

9. On or about January 4, 2005, the IRS sent Davis a Final Notice of Intent to Levy for years 1996 through 2000. Including interest and penalties, the notice of levy totaled approximately $436,051.

2

10. To attempt to prevent the IRS levy, in March 2005, Davis filed documents with the Iredell County Register of Deeds purporting to transfer title of his personal residence, located in Mooresville, North Carolina, to Cadco Investments, Inc.

11. In or about December 2005, the IRS directed Davis's employer to begin withholding federal income tax from Davis's wages. The IRS notified Davis of this direction by letter sent on or about December 22, 2005.

12. On or about March 13, 2006 and subsequent dates, to collect Davis's unpaid tax liabilities for years 1996 through 2000, the IRS issued notices of levy to Davis's employer and to financial institutions used by Davis.

13. On or about March 27, 2006, Davis filed for bankruptcy to attempt to defeat the IRS levies. On April 10, 2006, Davis filed a voluntary dismissal of the bankruptcy.

14. In or about April 2006, Davis filed five fraudulent Forms 1040X, Amended U.S. Individual Income Tax Returns, for years 1996 through 2000, respectively. The five Forms 1040X fraudulently purported to reduce Davis's adjusted gross income to amounts of less than $60 and made fraudulent refund claims upon the IRS in amounts ranging from $6,751 (1998) to $55,380 (1996).

15. On or about October 2, 2006, the IRS sent Davis a letter informing him that his 2000 Form 1040X was a frivolous return. The IRS offered Davis the opportunity to correct his position and once again informed Davis of the frivolous nature of the argument that there was no legal requirement to file income tax returns or to pay income taxes.

16. From April 2008 to August 2009, Davis filed with the IRS ten fraudulent IRS Forms 1040, U.S. Individual Income Tax Returns, for years 2001 through 2008, including two forms for each of the years 2004 and 2005. The ten Forms 1040 reported fictitious amounts of interest or other income in amounts ranging from $147,166 (2003) to $2,337,829 (2007) and fictitious amounts of federal income tax withheld in amounts ranging from $147,147 (2003) to $2,371,051 (2007). As a result of the fictitious amounts reported for federal income tax withheld, Davis's ten Forms 1040 made fraudulent refund claims upon the IRS in amounts ranging from $68,587 (2003) to $1,526,285 (2007).

17. On or about April 23, 2008, Davis sent or caused to be a sent a fictitious "Bonded Promissory Note" in the amount of $10,000,000, as well as other fraudulent documents, to the Department of Treasury and to the IRS in an attempt to pay his mortgage.

18. On or about June 26, 2008, after the Superior Court for Iredell County issued an order authorizing the foreclosure of Davis's personal residence, Davis sent or caused to be sent a fictitious "Bonded Promissory Note" in the amount of $5,000,000, as well as other fraudulent documents, to the United States Department of Treasury and other parties. Davis filed for bankruptcy in October 2008 to attempt to prevent eviction. In January 2009, the federal bankruptcy court dismissed Davis's bankruptcy filing.

19. On or about January 8, 2009, Davis submitted fraudulent correspondence to the IRS, including an IRS Form 1040-V, Payment Voucher, and three documents styled "Allonge." The documents purported to make payments to the United States Treasury totaling approximately $2,259,075, including amounts relating to Davis's outstanding IRS liabilities and an amount of $147,219 relating to Davis's outstanding tax liability to the State of North Carolina for years 1999 through 2003.

20. On or about February 7, 2009, Davis submitted a fraudulent voucher to the IRS purporting to pay approximately $1,109,811 to the United States Treasury.

21. On or about February 20, 2009, the IRS informed Davis's employer to resume the levy upon Davis's wages, which had been temporarily suspended during his bankruptcy proceeding in late 2008 and early 2009. To attempt to avoid the levy, Davis, during year 2009 and other years, directed additional contributions to his 401(k) retirement plan to reduce or eliminate his net pay.

22. On or about April 3, 2009, Davis sent fraudulent documents to the IRS, including a fictitious money order for approximately $1,600,000, which purported to make payment upon Davis's tax liabilities.

23. In October 2009, Davis opened a bank account in the name of "Unlisted-Trust." Davis represented that the bank account was for a corporation and fraudulently supplied a tax identification number that had not been issued by the IRS.

24. From October 2009 to January 2010, to conceal his income and assets from the IRS, Davis deposited the proceeds of numerous paychecks into the Unlisted-Trust account, upon which paychecks his employer had failed to make wage levies.

25. On or about July 16, 2010, Davis sent the IRS fraudulent documents, including fraudulent IRS Forms 1096 and Form 1099-A, that purported to pay the IRS approximately $181,053, the amount of Davis's outstanding tax liability to the State of North Carolina for years 1999 through 2003.

**COUNTS ONE THROUGH FIVE**
**26 U.S.C. Section 7206(1)**
**Willfully Filing Materially False Amended Tax Returns**

26. Paragraphs 1 through 25 of the Introduction are re-alleged and incorporated herein.

27. That on or about the dates listed in the table below, the defendant, CHARLES A. DAVIS, a resident of Mooresville, North Carolina, did willfully make and subscribe IRS Forms 1040X, Amended U.S. Individual Income Tax Returns, for the years listed below, each of which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. The IRS Forms 1040X, each of which was prepared and signed in the Western District of North Carolina and which was filed with the IRS, reported a "Correct Amount" of adjusted gross income in the amounts listed below, whereas, as the defendant

4

Case 5:26-cv-00081-SCR   Document 1   Filed 04/06/26   Page 25 of 27

then and there knew and believed, his true and correct adjusted gross income was substantially greater than the amount reported as the "Correct Amount."

| Count | Year | Date | Line | "Correct Amount" of Adjusted Gross Income |
|---|---|---|---|---|
| 1 | 1996 | April 28, 2006 | 1 | $52 |
| 2 | 1997 | April 28, 2006 | 1 | $0 |
| 3 | 1998 | April 28, 2006 | 1 | $17 |
| 4 | 1999 | April 28, 2006 | 1 | $0 |
| 5 | 2000 | April 28, 2006 | 1 | $0 |

All in violation of Title 26, United States Code, Section 7206(1).

## COUNTS SIX THROUGH TEN
### 26 U.S.C. Section 7206(1)
### Willfully Filing Materially False Amended Tax Returns

28. Paragraphs 1 through 25 of the Introduction are re-alleged and incorporated herein.

29. That on or about the dates listed in the table below, in the Western District of North Carolina, the defendant, CHARLES A. DAVIS, a resident of Mooresville or Charlotte, North Carolina, did willfully make and subscribe IRS Forms 1040, U.S. Individual Income Tax Returns, for the years listed below, each of which was verified by a written declaration that it was made under the penalties of perjury and which the defendant did not believe to be true and correct as to every material matter. The IRS Forms 1040, each of which was prepared and signed in the Western District of North Carolina and which was filed with the IRS, reported federal income tax withheld in the amounts listed below, whereas, as the defendant then and there knew and believed, the true amount of federal income tax withheld was substantially less than the amount reported.

| Count | Year | Date | Line | Federal Income Tax Withheld |
|---|---|---|---|---|
| 6 | 2004 | April 15, 2008 | 63 | $269,808 |
| 7 | 2005 | October 1, 2008 | 64 | $644,421 |
| 8 | 2006 | October 27, 2008 | 64 | $388,798 |
| 9 | 2007 | October 27, 2008 | 64 | $2,371,051 |
| 10 | 2008 | February 20, 2009 | 62 | $2,326,940 |

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT ELEVEN
### 26 U.S.C. Section 7212(a)
### Corruptly Obstructing and Impeding the IRS

30. Paragraphs 1 through 25 of the Introduction are re-alleged and incorporated herein.

31. From in or about March 2006 through the present, the defendant, CHARLES A. DAVIS, in the Western District of North Carolina and elsewhere, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by the following means, among others:

   a. Filing or causing to be filed fraudulent IRS forms, including Forms 1040 and 1040X for years 1996 through 2008;

   b. Filing for bankruptcy to attempt to defeat IRS levies;

   c. Sending fictitious documents to the Department of Treasury and the IRS, which purported to discharge his debts to the United States Treasury and other parties;

   d. Providing false information in connection with the opening of a bank account, including a taxpayer identification number that had not been issued by the IRS; and

   e. Concealing his assets and income in a nominee bank account.

All in violation of Title 26, United States Code, Section 7212(a).

ANNE TOMPKINS
UNITED STATES ATTORNEY

JENNY GRUS SUGAR
ASSISTANT UNITED STATES ATTORNEY

KEVIN C. LOMBARDI
TRIAL ATTORNEY, TAX DIVISION
U.S. DEPARTMENT OF JUSTICE

6